UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| BERNARD ROGAN and MYRA LOU ROGAN, | ) ) ) | Case No. 05-02066-GBN |
| | ) | |
| Debtors. | ) | |
| _____ | ) ) | |
| KENNETH KORUS and JO-ANNE E. KORUS, | ) ) ) | Adversary No. 05-00329 |
| | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | FINDINGS OF FACT, CONCLUSIONS OF LAW |
| BERNARD ROGAN and MYRA LOU ROGAN, | ) ) ) | AND ORDER |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The adversary complaint of plaintiffs Jo Anne E. and Kenneth Korus against defendants Bernard and Myra Lou Rogan was tried to the court as a bench trial on February 27, 2006. Post trial briefing was completed on March 30, 2006. An interim order was entered on April 18, 2006 announcing the court's decision.

The court has considered sworn witness testimony, admitted exhibits, pleadings and the facts and circumstances of this case. The following findings and conclusions are now entered:

**FINDINGS OF FACT**

1.) Plaintiff Jo Ann E. Korus and defendant debtor Bernard Rogan were married in 1990 and divorced in 2002. Pursuant to their property settlement agreement, the marital home in

Goodyear, Arizona was awarded to plaintiff. An equity loan on the residence was to be paid by defendant, in exchange for his retention of two automobiles, a BMW and an Infinity Q 45. The February of 2000 agreement provided that debtor was to satisfy or arrange for the debt to be removed from the residence within 18 months of entry of the divorce decree. By pleadings from secured creditor Citi Mortgage, plaintiff learned for the first time that defendant had defaulted in the required lien payments. When plaintiff learned that foreclosure was imminent, she went to Wells Fargo Bank and obtained a secured loan to pay off the delinquent Citi Mortgage debt of $45,266.03. She borrowed $75,000 to 80,000 on January 18, 2005 to pay off both the Citi Mortgage equity loan and an existing $21,000 senior lien. Plaintiff continues to make the interest only payments to Wells Fargo. Debtor was also obligated under the agreement to establish a life insurance policy for plaintiff. She has never received confirmation that he ever did so. Debtor and his present wife filed a voluntary Chapter 7 bankruptcy case within the District of Arizona on February 14, 2005. Plaintiff and her present husband filed an adversary complaint to determine the dischargeability of her claim against debtor on May 3, 2005. February 27, 2006 trial testimony ("test.") of Jo Ann Korus, admitted exhibits ("exs.") 3- 4, 5 (at pgs. 3-4 and exhibit A), 9-10, 14-16, 19.

  2.) Plaintiff's financial position as of November of 2005 is reflected in a signed statement. She last worked two years ago in food service and retail at Luke Air Force Base in Arizona. Her husband is a truck driver, whose income varies depending on miles traveled. He reported income of more than $57,000 in 2004 and averages $50,000 to $60,000 in annual income. Plaintiff has investments used in part to fund her retirement. Her Portfolio Management Account of approximately $47,000 predated her marriage to debtor and originated from an earlier divorce settlement. Her investment/retirement accounts are not reflected in exhibit 11, as they should have been. Nevertheless, she insists they were disclosed to debtors' counsel. In 2004 her investment accounts provided additional income of $4,000. She estimates $200,000 to $250,000 equity in her home and owns several vehicles, one of which is liened for $36,000 or more. Plaintiff erroneously valued this lien at $20,000 in exhibit 11. She is 58 years old, as is her husband and considers herself somewhat disabled, although she does not receive disability benefits. She is able to pay her bills,

including the interest only Wells Fargo payment. Plaintiff's husband has $30,000 in his own retirement savings. While married to plaintiff, debtor's income varied between $80,000 to $120,000, depending on his work as a business analyst. Korus test., exs. 11, E-I, K.

3.) Bernard Rogan is 59 years old and holds a Bachelor's degree in mathematics and computer sciences. For the last 15 to 20 years he as worked as an information technology ("IT") consultant and independent contractor. Since 1990 or 1991 there has been significant outsourcing in his field. Although he was fully employed at the time of the divorce, his employment situation has become more difficult. He testified he uses medication for high blood pressure and elevated cholesterol levels. He believes that stress prevents him from working long hours. His joint 2003 income tax return reflects withdrawl of $30,688 from an individual retirement account ("IRA"). This was done due to lack of earned income. Debtor's testimony is that this withdrawal came from his IRA, which caused its termination.[1] He now owns no real estate, IRAs or investments.

He recently voluntarily terminated his consulting contract due to stress. While searching for work in his area, he is currently working as a sales clerk at the Casual Male, a retail clothing store, earning $8 per hour and working 20 to 24 hours weekly. His current wife separately holds $225,000 to $230,000 in her solely owned IRA. They have no dependents. In August of 2005, his current wife sold her separately owned home and purchased a manufactured home in a leased space at a mobile home park. His bankruptcy budget, Schedule J, inaccurately states rent, utilities and the expense of payments to plaintiff. Debtor's filed affidavit correctly lists his expenses. Rogan test., exs. A-B, I-J.

4.) Defendant's wife works at American Express as an IT consultant, earning $40 an hour. Debtor defaulted in his obligation to make lien payments on plaintiff's home in August of 2004, when he and his wife were both out of work and he had exhausted his IRA. He had made 48 payments on this debt. His testimony is that the last 20 payments on the divorce debt were made with money withdrawn from his retirement account. The couple began living on disbursements

---

[1] The couple's 2004 joint return reflects IRA withdrawals of $14,070. Debtor is unable to state whether this distribution is from his or his wife's IRA. His wife's funds are not used to pay plaintiff. Ex. J, Test. *id.*

from Mrs. Rogan's IRA. His wife and her separate property are not liable for plaintiff's debt. Her withdrawn IRA monies were not used to pay plaintiff's debt. He insists he did establish a life insurance policy for her former wife, but failed to notify her when he missed payments on this obligation as well. In his job search, debtor feels his age is against him. He testified he submitted more than 50 job applications without being granted an interview. When he voluntarily terminated his consulting contract, he was making $40 per hour. At the time both debtor and his wife were paid $6400 to $7000 monthly. His wife still makes this amount as an independent contractor. He voluntarily left his job without receiving a doctor's advice to do so. The couple own three vehicles, one of which was for sale at the time of trial. Rogan test., exs. 10, 12-13.

5.) Within the last two months of his testimony, debtor had annual gross income of $82,000 to $84,000, had a medical savings account and owned three cars. In the present bankruptcy, debtor and his current wife discharged more than $103,000 in debt. His bankruptcy Schedule J reflects $74,000 income in 2003, mainly from his wife's employment. Income for 2004 was $60,998. Debtor's testimony is that from 2003 to 2005, neither he nor his wife was employed full time in the IT industry. Their income would double if debtor could find a job comparable to his previous employment. He continues to search for such employment. Earlier, debtor filed bankruptcy in 1990 in New Jersey and completed his case.[2]

The August of 2005 sale of Mrs. Rogan's home resulted in a gain of $130,000. Twenty thousand dollars were placed in her retirement account. Community debts of $10,000 were paid and $84,000 to $90,000 was used to purchase their current home, which is jointly owned. Sale proceeds were placed into a savings account which was used as collateral to fund a loan for the new home. This process was used to protect the couple's community assets. The monthly mortgage payment is $1,656. They filed this bankruptcy case when they were not working and had exhausted their savings. Rogan test., exs. 12-13, 21.

---

[2] On October 25, 2004 debtor and his present wife filed a previous Chapter 7 case in this district. 04-18684-CGC. The case was dismissed on January 4, 2005 for debtors' failure to appear at a meeting of creditors. Administrative docket item 26, ex. 13.

Case 2:05-ap-00329-GBN    Doc 33    Filed 04/27/06    Entered 04/27/06 09:50:01    Desc
Main Document    Page 4 of 8

6.) Debtor terminated his project manager's consulting contract approximately two weeks prior to his trial testimony. He felt this job, where he had no help, had a bad atmosphere and he had no future there. He left this high paying consulting work for part time retail sales. Debtor's testimony concerning the reasons he terminated his consulting work was not credible to this fact finder. Rogan test.

7.) If any of the following conclusions of law should be considered findings of fact, they are hereby incorporated by reference.

**CONCLUSIONS OF LAW**

1.) If any of the above findings of fact should be considered conclusions of law, they are hereby incorporated by reference.

2.) Jurisdiction of debtor's Chapter 7 bankruptcy case is vested in the United States District Court for the District of Arizona. 28 U.S.C. §1334(a) (1994). That court has referred all cases under Title 11 of the United States Code and all adversary proceedings and contested matters arising under Title 11, or related to a bankruptcy case to the United States Bankruptcy Court for the District of Arizona. 28 U.S.C. §157(a), Amended District Court General Order 01-15. This adversary having been appropriately referred, this court has core bankruptcy jurisdiction to determine the dischargeability of plaintiff's claim. 28 U.S.C. §157(b) (2) (I). No party has argued to the contrary.

3.) This court's conclusions of law are reviewed *de novo*. Its factual findings are reviewed for clear error. *Hanf v. Summers (In re Summers),* 332 F. 3d 1240, 1242 (9th Cir. 2003). Findings of fact, whether based on oral or documentary evidence, will not be set aside unless clearly erroneous. Due regard is given to the opportunity of the bankruptcy court to judge witness credibility. Rule 8013, *F.R.B.P.* The appellate court accepts the bankruptcy court's findings, unless upon review, it is left with the definite, firm conviction that a mistake has been committed. *Ganis Credit Corp. v. Anderson (In re Jan Weilert RV, Inc.),* 315 F. 3d 1192, 1196 (9th Cir.) *amended by* 326 F. 3d 1028 (9th Cir. 2003).

4.) Section 523 (a) (15) of the bankruptcy code provides that a chapter 7 discharge does not discharge a debt undescribed in paragraph (5) that is incurred in the course of a divorce,

Case 2:05-ap-00329-GBN    Doc 33    Filed 04/27/06    Entered 04/27/06 09:50:01    Desc
Main Document    Page 5 of 8

unless (A) debtor does not have the ability to pay such debt from income or property not reasonably necessary to be expended for maintenance or support of debtor or (B) discharging such debt would result in a benefit to debtor that outweighs the detrimental consequences to a former spouse. 11 U.S.C. §523 (a) (15). Subsection (A) is the "ability to pay test." Subsection (B) is the "detriment test." *Jodoin v. Samayoa (In re Jodoin),* 209 B.R. 132, 139 nn. 17, 18 (9th Cir. Bankr. 1997). Once plaintiff demonstrates that debtor incurred the debt in connection with a divorce, the burden shifts to debtor to prove subsections (A) or (B). 209 B.R. at 140. Here plaintiffs have established their case in chief. *See* finding of fact 1, *supra*. Accordingly debtor has the burden of proof to come forward with evidence to establish the viability of either test. *Id.* at 141.

5.) First the court examines debtor's ability to pay. If debtor lacks the ability to pay, the debt is discharged. Only if debtor has the ability to pay will the court turn to § 523 (a) (15) (B) to measure whether the benefit of granting the discharge outweighs the detriment that discharge causes the non debtor spouse. *Id.* at 141, n. 24. The appropriate time to apply the ability to pay and detriment tests is at the trial, not at the time of filing bankruptcy. The primary test for measuring debtor's ability to pay is the "Disposable Income Test." *Id.* at 142. "Disposable Income" is debtor's income not reasonably necessary for maintenance or support of a debtor, dependent or debtor's business. 11 U.S.C. § 1325 (b). Parties have been known to sacrifice their own financial well being to spite a former spouse. Thus, proper application of the test should take into account the prospective income that debtor should earn and his reasonable expenses. 209 B.R. at 142.

Had debtor chose to remain at his high paying technology job at the time of trial, the court would have little difficulty in finding that he had the ability to pay plaintiff's claim, as he had done for 48 months following the divorce. Debtor failed in his burden of establishing a credible reason for his voluntary relinquishment of this employment shortly before trial. Finding of fact 6. Accordingly, he has failed to meet the ability to pay test.

6.) Having determined that debtor has the ability to pay, the court must determine if the benefit of a discharge to debtor out weighs the detriment that discharge causes the non debtor spouse. The relevant inquiry into benefit and detriment focuses on the total economic situations of the parties in their new lives. 209 B.R. at 143. Because the balance of the equities test requires the

Case 2:05-ap-00329-GBN    Doc 33    Filed 04/27/06    Entered 04/27/06 09:50:01    Desc
Main Document      Page 6 of 8

bankruptcy court to reach an equitable conclusion, rather than a factual or legal one, it is reviewed by the appellate court for an abuse of discretion. *Graves v. Myrvang (In re Myrvang),* 232 F. 3d 1116, 1121 (9th Cir. 2000). The court concludes that the capacity of plaintiff's martial community (consisting of one to two "blue collar" workers[3]) for future earnings is more limited that the capacity of debtor's community (consisting of two professional or "white collar" workers), given the prospective income debtor should earn. This review includes the income of debtor's new spouse as a relevant factor in determining dischargeability. *Short v. Short (In re Short),* 232 F. 3d 1018, 1023 (9th Cir. 2000). While debtor made much in his testimony of the uncertainties in his technology field, there was no expert evidence presented that these economic dislocations were greater than those facing plaintiff's husband in his occupation. Sadly in today's economy, stable long term employment is not guaranteed.[4] Likewise, debtor's complaint of the difficult job search faced by aging workers is applicable to all the parties in this case, including plaintiff. Defendant has failed to carry his burden of proof regarding § 523 (a) (15) (B). *See In re Myrvang, supra* at 1121.

**ORDER**

The court finds for plaintiffs and against defendant. Creditor's bankruptcy claim will not be discharged. Plaintiffs will promptly file for costs and lodge and serve a proposed judgment. Defendant will have ten days from service to object to the form of the judgment.

DATED this 27th day of April, 2006.

_____
George B. Nielsen, Jr.
United States Bankruptcy Judge

---

[3] While both plaintiff and debtor claimed medical conditions that interfered with their respective ability to work, neither presented expert medical testimony. Accordingly, the court could not give great weight to their lay testimony regarding either's health circumstances.

[4] With the possible exception of bankruptcy judges.

| | |
|---|---|
| 1 | |
| 2 | Copies emailed this 27th day of April, 2006, to: |
| 3 | |
| 4 | Julius F. Harms<br>BELLAH & HARRIAN, PLLC<br>5622 W. Glendale Avenue |
| 5 | Glendale, AZ 85301-2525<br>Email: bharms@azlawyer.org |
| 6 | Attorney for Plaintiffs |
| 7 | Lawrence D. Hirsch<br>HIRSCH LAW OFFICE, P.C. |
| 8 | 5020 E. Shea Blvd., #150<br>Scottsdale, AZ 85254 |
| 9 | Email: Lawrence.Hirsch@azbar.org<br>Attorney for Defendants |
| 10 | |
| 11 | By /s/Rachael M. Stapleton<br>        Judicial Assistant |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |